IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BLUE AIR TRAINING CORPORATION,

    Plaintiff,

v.                                                        No. 2:23-cv-0734-KG-JHR

COLLIN HADLEY, TONY JAYNE, DESERT
AVIATION, LLC, and WILLIAM CODY JONES,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant William Cody Jones' Motion for Summary Judgment, (Doc. 71), filed on October 8, 2024. Defendants and Cross-Claimants Desert Aviation LLC and Tony Jayne (Desert Aviation Parties) filed their Response, (Doc. 86), November 5, 2024, and Defendant Jones filed his Reply, (Doc. 92), on November 19, 2024. On May 15, 2025, the Court granted Desert Aviation Parties' Unopposed Motion for Leave to File a Supplemental Summary Judgment Response and Evidence. (Doc. 155). Desert Aviation Parties filed their Supplemental Response, (Doc. 167), on July 9, 2025. Defendant Jones filed his Supplemental Reply, (Doc. 169), on July 21, 2025. Having considered the briefing and relevant case law, the Court grants the Motion.

*I. Background[1]*

This case arises from an aircraft collision that occurred on December 15, 2022, at the Deming Municipal Airport. (Doc. 71) at 3 (citing Doc. 71-1). One of the aircraft involved in the

---

[1] Unless otherwise indicated, the facts in this section are either undisputed or stated in the light most favorable to the nonmovant. *Estate of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022). To the extent facts have been omitted, the Court deems them immaterial to the Motion.

collision was the Aeronca. *Id.* Defendant Jones was the registered owner of the Aeronca at the time of the incident, though the aircraft had been sold and was being transported to the buyer in California. *Id.* (citing Docs. 71-2, 71-3, and 71-4).[2] On December 26, 2021, less than a year before the accident, Federal Aviation Authority (FAA) Certified Airframe and Powerplant Mechanic Jimmy D. Smyers performed an annual inspection on the Aeronca and a 100-hour inspection on the Aeronca's engine, certifying the plane as airworthy. *Id.* (citing Doc. 71-9 at 3). At the time of the incident, the Aeronca had a current and valid Standard Airworthiness Certificate. *Id.* (citing Doc. 71-9 at 1–2).[3]

At the time of the incident, Defendant Hadley was not, and had never been, employed by Defendant Jones. *Id.* (citing Docs. 71-4, 71-5, and 71-6).[4] Although Defendant Hadley was not an employee of Defendant Jones, the two had a verbal agreement that Defendant Hadley would broker the sale of the Aeronca aircraft. (Docs. 167) at 1, ¶ 1 (citing Doc. 167-1) at 2. Based on their agreement, Defendant Hadley would receive five percent from the Aeronca sale and Defendant Jones would "have nothing to do with [the sale]." (Doc. 167-1) at 2.

---

[2] Desert Aviation Parties fail to dispute this fact with competent evidence. *See generally* (Docs. 86, 167). The Court therefore determines this fact is undisputed. *See* D.N.M. LR-Civ. 56.1(b) ("All material facts set forth in the response will be deemed undisputed unless specifically controverted.").

[3] Desert Aviation Parties dispute this fact, arguing that the photograph of the Standard Airworthiness Certificate (Certificate) has not been authenticated, but the Court finds the Certificate is self-authenticating under Federal Rule of Evidence 902, as it is a document that "bears: (A) a seal purporting to be that of the United States…and (B) a signature purporting to be an execution or attestation." Fed. R. Evid. 902(1).

[4] Desert Aviation Parties dispute this fact but fail to specially controvert it with evidence of an employment relationship between Defendants Jones and Hadley. *See generally* (Doc. 167). The Court therefore determines this fact is undisputed.

On October 18, 2022, Defendant Hadley issued an invoice to the buyer of the Aeronca, indicating that Zane Co. Aero would be delivering the Aircraft to the Lancaster, California airfield (KWJF) at "NO CHARGE." (Doc. 71) at 4 (citing Doc. 71-3). The Aeronca was stored in Defendant Hadley's hangar. (Doc. 167-1) at 3. Defendant Hadley kept Defendant Jones informed about his plans for delivering the Aeronca to the buyer. (Doc. 167-1) at 8. Sometime before the accident on December 15, 2022, Defendant Hadley told Defendant Jones that he and Mr. Smyers discovered that the Aeronca had a cracked tailwheel housing. *Id.* at 8, 10–11. Defendant Hadley arranged for Mr. Smyers to repair the tailwheel housing. Although Defendant Hadley paid Mr. Smyers for the repair, Defendant Jones assumed Defendant Hadley would take the cost of repairs out of what Defendant Hadley owed him. *Id.* The repair was not entered into the Aeronca's logbooks. *Id.*

Defendant Jones gave Defendant Hadley general approval to fly the Aeronca to the buyer in Lancaster, but he did not direct, advise, or instruct Defendant Hadley about the particulars of the December 15, 2022, flight and transport. (Doc. 167-1) at 11; (Doc. 71-4). During the attempted delivery of the Aeronca on December 15, 2022, Defendant Jones texted with Defendant Hadley multiple times to check the flight's progress, asking him to where he was flying that day. (Doc. 167-1) at 9. Defendant Jones did not accompany Defendant Hadley on this flight and was not present when the accident occurred at the Deming Municipal Airport. *Id.* (citing Docs. 71-1 and 71-4). Defendant Hadley did not consult with Defendant Jones regarding the "hand-propping" procedure immediately before or during the incident on December 15, 2022. *Id.* (citing Docs. 71-4 and 71-8, at 39).[5]

---

[5] Desert Aviation Parties dispute this fact but fail to point to contrary evidence in the record. The Court therefore deems this fact undisputed.

*II. Legal Standard*

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323.

Although the moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact," once he has done so, "the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022) (citation omitted). In opposing summary judgment, the non-movant cannot rest on mere allegations but "must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation omitted). "The summary judgment standard requires [the Court] to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Beauford*, 35 F.4th at 1261 (citing *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021)).

*III. Discussion*

For the reasons below, the Court concludes that Defendant Jones is entitled to summary judgment on Desert Aviation Parties' crossclaims because (1) Desert Aviation Parties failed to adduce evidence demonstrating that the Aeronca was unairworthy and (2) Defendant Jones did not have "operational control" of the Aeronca at the time of the accident.

*A. The Undisputed Evidence Fails to Demonstrate that the Aeronca was Unairworthy.*

The Court concludes that there is insufficient evidence for a reasonable jury to conclude that the Aeronca was unairworthy at the time of the accident. Despite being nonmovants, Desert Aviation Parties bear the burden to demonstrate that the Aeronca was unairworthy at the time of the incident. *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017).

Here, the undisputed material facts show the following. First, the Aeronca had a current and valid standard airworthiness certificate at the time of the accident. (Doc. 71-9). Second, Mr. Smyers performed an annual 100-hour inspection on the Aeronca less than one year before the accident. *Id.* Third, sometime before delivering the Aeronca, Defendant Hadley told Defendant Jones that he and Mr. Smyers discovered that the Aeronca had a cracked tailwheel housing. (Doc. 167-1) at 8, 10–11. Fourth, Defendant Hadley arranged for Mr. Smyers to repair the tailwheel housing. *Id.* Fifth, the tailwheel repairs were not entered into the Aeronca's logbooks. *Id.*

Desert Aviation Parties contend that this last point—that the tailwheel repairs were not entered into the logbooks—rendered the Aeronca unairworthy. However, they fail to cite any case law holding that the failure to timely log all repairs renders an aircraft unairworthy. *See* D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced."). Instead, Desert Aviation Parties direct the Court to the Federal Aviation

5

Regulations. (Doc. 167) at 3, ¶ 13. Although 14 C.F.R. § 91.405 places responsibility on the owner to "ensure that maintenance personnel make appropriate entries in the aircraft maintenance records," it does not provide that a failure to do so renders the aircraft unairworthy. Desert Aviation Parties' failure to cite authority supporting their position is fatal to their argument that the Aeronca was unairworthy unavailing.

  B. *The Undisputed Evidence Fails to Demonstrate Defendant Jones had "Operational Control."*

The Court concludes that Defendant Jones did not have "operational control" over the Aeronca on the date of the accident and is therefore entitled to summary judgment on Desert Aviation Parties' claims. As noted in this Court's earlier Memorandum Opinion and Order, 49 U.S.C. § 44112 shields aircraft owners from liability related to property loss or damage unless they had actual possession or "operational control" of the aircraft. (Doc. 141) at 6. Section 44112 states:

> (b) Liability.--A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage only when a civil aircraft, aircraft engine, or propeller is in the actual possession or operational control of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of--
>   (1) the aircraft, engine, or propeller; or
>   (2) the flight of, or an object falling from, the aircraft, engine, or propeller.

49 U.S.C. § 44112(b)(2018). In this case, Desert Aviation Parties do not argue that Defendant Jones had actual possession of the aircraft. Consequently, Defendant Jones could only be found liable for the accident if he had "operational control." *Id.*

Desert Aviation Parties first argue that Defendant Jones was in "operational control" of the flight on December 15, 2022, directly and through Defendant Hadley, his alleged agent. (Doc. 167) at 10–11. First, Desert Aviation Parties argue that Defendant Jones was in direct

6

"operational control" of the flight because he gave Defendant Hadley permission to fly the Aeronca to the buyer, thereby exercising authority over initiating the flight. (Doc. 86) at 13.

The Court is unconvinced. The FAA regulations support this conclusion. Those regulations distinguish between "operate" and "operational control." *See* 14 C.F.R. § 1.1. "Operate with respect to an aircraft, means use, cause to use or authorize to use aircraft, for the purpose…of air navigation including the piloting of aircraft, with or without the right of legal control (as owner, lessee, or otherwise)." *Id.* "Operational control," on the other hand, is defined "with respect to a flight" and means "the *exercise* of authority over initiating, conducting or terminating a flight." *Id.* (emphasis added); *see also Centofanti v. Evans*, 2018 WL 11616197, at *3 (D. Colo.) (explaining that "operational control" requires that a party "engaged in some concrete fashion in the operation of the aircraft"); (*Escobar v. Nevada Helicopter Leasing LLC,* 2020 WL 1076107, at *4 (D. Haw.) ("[T]o have operational control it must have been both 'actual' control and to have been 'exercised' on the flight."). These definitions recognize a distinction between one who could be understood to "operate" an aircraft and one who is in "operational control" over a flight. Consequently, Defendant Jones' authorizing Defendant Hadley's use of the Aeronca fits within the definition of "operate", but not "operational control." Again, there is no evidence that Defendant Jones actually exercised authority related to the flight—or attempted flight—that led to the accident. The fact that Defendant Jones exchanged text messages with Defendant Hadley asking about the flight's progress does not support a different determination.

Desert Aviation Parties next argue that Defendant Jones was in "operational control" of the flight on December 15, 2022, because Defendant Hadley was acting as his agent. (Doc. 167) at 4–11. However, Desert Aviation Parties cite no Supreme Court or Tenth Circuit precedent

7

holding that the existence of an agency relationship alone is enough to impute liability to an aircraft owner for a pilot's negligence. Instead, they rely on the FAA's Advisory Circular 91-37B and a single, unpublished Ninth Circuit case. (Doc. 167) at 5 (citing *Escobar v. Nevada Helicopter Leasing LLC*, 756 Fed. Appx. 724 (9th Cir. 2019)). Neither of these authorities applies in this case. First, the Advisory Circular's subject is "Truth in Leasing" with the stated purpose to "provide information and guidance for lessees and conditional buyers of U.S.-registered aircraft." (167-4) at 1. But there is no alleged lease at issue in this case, and none of the parties are lessees or conditional buyers. Moreover, Desert Aviation Parties make no argument that this Court is bound by the Advisory Circular.

Second, the Ninth Circuit case Desert Aviation Parties rely on is inapposite. In *Escobar*, the Ninth Circuit applied a previous version of 49 U.S.C. § 44112(b). That version of § 44112(b) read, in relevant part, that an owner is liable for personal injury, death, or property loss or damage only when a civil aircraft is in his "actual possession or *control*." 49 U.S.C. § 44112(b)(1994) (emphasis added). Based on this version of § 44112(b), the Ninth Circuit determined that a genuine factual dispute existed as to who had actual "control" of the aircraft based on the existence of an agency relationship. The Ninth Circuit explained that the helicopter lessee company and the helicopter lessor company shared the same owner, and the owner was the sole signatory to the lease agreement—signing on behalf of both companies—and had executive authority at both companies to cancel flights. *Escobar*, 756 Fed. Appx. at 725–26. The facts in *Escobar* are readily distinguishable from the facts in this case, and Desert Aviation Parties make no attempt to argue otherwise.

Since *Escobar* was decided, Congress has updated the statutory language in 49 U.S.C. § 44112(b). It now reads that an owner is liable for personal injury, death, or property loss or

damage only when a civil aircraft is in his "actual possession or *operational control*."  49 U.S.C. § 44112(b)(2018) (emphasis added).  This distinction is significant.  The difference between the statutory language in 1994 and 2018 version of § 44112(b) suggests that Congress intended to clarify the distinctions between "control" and "operational control."  The FAA regulations do not define "control," but as discussed above, they do define "operational control."  "Operational control" is "the exercise of authority over initiating, conducting or terminating a flight."  14 C.F.R. § 1.1 (2021).  Black's Law Dictionary defines "control," in pertinent part, as the "direct or indirect power to govern the management and polices of a person or entity…by contract, or otherwise; the power or authority to manage, direct, or oversee."  *Black's Law Dictionary* (12th ed. 2024).[6]

      Clearly, "control" is a more expansive term than "operational control."  To have "control," one must only have power or authority over another.  "Operational control," on the other hand, requires the actual, concrete exercise of such authority.  Put another way, one could have the power to exercise authority—i.e., "control"—but without actually exercising such power, one does not have "operational control."  This distinction finds support in the limited case law interpreting "operational control."  *See*, *Centofanti*, 2018 WL 11616197, at *3 (D. Colo.) (explaining that "operational control" requires that a party "engaged in some concrete fashion in the operation of the aircraft"); *see also Escobar,* 2020 WL 1076107, at *4 (D. Haw.) ("49 U.S.C. § 44112, requires that the operational control must be 'actual,' not theoretical.").

      Absent binding case law to the contrary, the Court concludes Defendant Jones did not have "operational control" of the Aeronca at the time of the accident on December 15, 2022.

---

[6] The eleventh edition of Black's Law Dictionary, published in 2019, contains the same definition.  *See Black's Law Dictionary* (9th ed. 2019).

Desert Aviation Parties have put forth no evidence suggesting Defendant Jones engaged in some concrete fashion in the operation of the December 2022 flight. As a result, Defendant Jones did not have "operational control" and is therefore shielded from liability on Desert Aviation Parties' claims under 49 U.S.C. § 44112(b).

*IV. Conclusion*

For the reasons discussed above, the Court grants Defendants Jones' Motion for Summary Judgment, (Doc. 71).

IT IS SO ORDERED.

/s/_____
KENNETH J. GONZALES[7]
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.