**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**BLUE AIR TRAINING CORPORATION,**

      **Plaintiff,**

v.                                                                                          **No. 23-cv-734 KG/JHR**

**COLLIN HADLEY, TONY JAYNE, DESERT
AVIATION, LLC, and WILLIAM CODY
JONES,**

      **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT JONES' MOTION TO COMPEL [DOC. 171].</u>

THIS MATTER is before the Court on Defendant William Cody Jones' Motion to Compel Defendant and Cross Claimants Desert Aviation, LLC and Tony Jayne's (collectively "Desert Aviation Parties") Responses to William Cody Jones' First Set of Interrogatories, Requests for Production and Requests for Admission. [Doc. 171]. Desert Aviation Parties filed a response in opposition [Doc. 174] and Jones replied [Doc. 175]. For the below reasons, the Court will GRANT IN PART Jones' motion.

### I.      <u>BACKGROUND</u>

This case concerns "a ground collision between a Valmet A-90 Raider and an Aeronca 65CA Super Chief at the Deming Municipal Airport on December 15, 2022." [Doc. 171, at 2]. The Aeronca was flown by Defendant Collin Hadley; Plaintiff Blue Air allegedly owned the Valmet. [Doc. 37, at 2]; [Doc. 27, at 19]. On the day in question, Hadley was at the Deming Municipal Airport and asked Jayne to help him start the Aeronca. [Doc. 182, at 2]. Jayne was an employee of Defendant Desert Aviation, LLC, the fixed-base operator of the Deming Municipal Airport at that time. *Id.* Jayne agreed to help and told Hadley that he had "experience assisting in hand

propping the aircraft" but maintains he "never informed [] Hadley that he had experience assisting in hand propping an aircraft from inside the cockpit" (as opposed to hand-propping from outside an aircraft). *Id.* (citing [Doc. 64, at 14, 16-17]). At Hadley's request, Jayne "sat in the cockpit" even though the Aeronca was "secured via chock, tie down, or otherwise." *Id.* at 2, 3 (citation omitted).

Even though Jayne "did not touch or in any way adjust the throttle," the Aeronca's engine went full throttle as soon as it started. *Id.* at 3 (quoting [Doc. 64, at 14]). Once the runaway began, Jayne "pulled the throttle all the way out to attempt to slow the aircraft but this had no effect on the engine speed or velocity," nor did applying the brakes. *Id.* When those measures failed, Jayne "used the aircraft foot pedals in an [] attempt to steer the aircraft away from hazards." *Id.* However, the Aeronca still collided with the Valmet. *Id.* After the collision, Jayne asked Hadley if "anything like this had happened to [him] before," to which Hadley responded it had. *Id.* (quoting [Doc. 64, at 14]). Hadley described one instance when he "experienced a similar event in the Aeronca." *Id.*

## II.    INTERROGATORIES

A party may serve an interrogatory inquiring about any matter within the scope of discovery. Fed. R. Civ. P. 33(a)(2). "Each interrogatory—to the extent it is not properly objected to—must be answered fully." *Lowe v. Travelers Home & Marine Ins. Co.*, No. 25-CV-00635, 2026 WL 926219, at *5 (citing Fed. R. Civ. P. 33(b)(3)). "Evasive or incomplete responses are treated as a failure to respond. *Id.* (citing Fed. R. Civ. P. 37(a)(4)). Courts in this circuit have rejected "ostensible" general objections "purport[ing] to object to each discovery request propounded 'to the extent' that the request calls for various categories of information." *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 538 (D. Kan. 2006) (collecting cases). If an interrogatory may be answered through examining records, and the burden is "substantially the same" for both parties,

the responding party may produce records instead of writing a narrative answer so long as the responsive records are cited with specificity. Fed. R. Civ. P. 33(d). A reference to previously disclosed discovery or citing a group of records will not suffice. *Lucero v. Valdez*, 240 F.R.D. 591, 595 (D.N.M. 2007).

*Contention Interrogatories: 2, 3, 4, 5, 9, and 15*

Jones contends that Desert Aviation Parties' answers to interrogatory numbers 2, 3, 4, 5, 9, 12, 13, 14, 15,-and 16 are deficient. [Doc. 171, at 4]. The Court will first address the contention interrogatories numbered 2, 3, 4, 5, 9, and 15.

A contention interrogatory asks a party to state what it contends, all facts upon which it bases a contention, or how the law applies to the facts. *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 448 (D. Utah 2020); *Johnson v. Sw. Pub. Serv. Co.*, No. CV 11-413 JP/GBW, 2011 WL 13277506, at *3 (D.N.M. Dec. 13, 2011). Contention interrogatories seek to clarify and narrow the issues or the scope of a party's claims. *Johnson*, 2011 WL 13277506, at *3 (citing *Lucero*, 240 F.R.D. at 594)). They may be "tedious" and need "special treatment," but are nonetheless permissible so long as they seek non-privileged information. *Smash Tech*, 335 F.R.D. at 448 (citing *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 19 (D.D.C. 2017)); *Lucero*, 240 F.R.D. at 594. However, contention interrogatories which request "every fact and document" or "all facts" are objectionable. *See Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000). Similarly, they may not in essence require a narrative account of the opposing party's case or track the majority of its allegations. *Lucero*, 240 F.R.D. at 594 (internal citation omitted). But, to be sure, a contention interrogatory may inquire into the "material or principal facts that support a party's contentions." *Id.*; *see Steil*, 197 F.R.D. at 447.

3

Interrogatory No. 2

Interrogatory number 2 asks, "Please state the material facts [*sic*] you base your claim in paragraph 5 of your Cross Claims that Defendant Jones was the 'operator' of the Aeronca 65CA Super Chief aircraft 'On or about December 15, 2022.'" [Doc. 171-1, at 2]. Desert Aviation Parties objected that this interrogatory calls for a legal or expert conclusion. *Id.* Subject to that objection, Desert Aviation Parties answered, "Mr. Jones owned and exercised authority over the initiation of the flight on the date of the accident, the accident flight, and use of the subject Aeronca aircraft on the day of the accident." *Id.* Jones complains that Desert Aviation Defendants "merely repackage their baseless claims from the Complaint" instead of citing material information such as "text messages or testimony indicating Mr. Jones was directing Mr. Hadley on when to leave, where to fly, *or* how to operate the Aircraft[.]" [Doc. 171, at 5].

The Court overrules Desert Aviation Parties' objections because the interrogatory stays within the bounds of asking for "material" facts. The Court also agrees with Jones that Desert Aviation Parties' answer is conclusory. It states that Jones "owned and exercised authority over the initiation of the flight," but fails to provide any *facts* leading them to conclude that Jones owned and exercised the aircraft and/or flight. Thus, Desert Aviation Parties must supplement their answer to interrogatory number 2.

Interrogatory No. 3

Interrogatory number 3 asks:

> Please state the material facts you base the allegation in paragraph 7 of your Cross Claims that '[o]n or about December 15, 2022, and at all times material to events described herein, Defendant Jones was the employer of Defendant Hadley.' In responding to this Interrogatory, identify any information and/or documents that you rely on in claiming Defendant Jones employed Defendant Hadley.

[Doc. 171-1, at 2]. After paragraphs of objections, Desert Aviation Parties responded:

4

[B]oth Mr. Jones and Collin Hadley have testified that Mr. Jones retained Mr. Hadley and/or Mr. Hadley's company, Zane Co. Aero, LLC, to fly the Aeronca to the prospective buyer Don Calloway who resided in California. The Desert Aviation Parties identify the following documents:
- Text messages produced by Mr. Hadley Bates numbered as Hadley 102-114;
- Tex[t] messages produced by Mr. Jones Bates numbered as Jones 104-156; and
- Zane Co. Aero LLC invoice Bates-numbered as Hadley 15.

*Id.* at 3.

Jones did not explain why this answer was unsatisfactory in his original motion. However, in his reply he argued that Desert Aviation Parties misrepresented Hadley's and Jones' testimony that Hadley was retained to fly the Aeronca to a prospective buyer. [Doc. 175, at 4]. Further, Jones says that retaining a party does not prove an employee/employer relationship. *Id.* Regarding the text message citations, Jones complains that Desert Aviation Parties "cite to all text messages between Jones and Hadley without any delineation as to which texts actually support their contention (none do)." *Id.* Jones urges that only irrelevant or misrepresented facts were provided and so the Court should compel disclosure of material facts. *Id.*

The Court grants this interrogatory in part. It is not the Court's place to instruct a party how to substantively craft its interrogatory answer or opine on its veracity so long as it complies with Rule 33. Desert Aviation Parties answered that retaining Hadley showed an employment relationship, and Jones may disprove that assertion through cross examination and further discovery. However, the Court will require Desert Aviation Parties to cite specific text messages or certain pages within the batches of text messages in Hadley 102-114 and Jones 104-156 to comply with Rule 33's specificity requirement for referencing documents. *See* Fed. R. Civ. P. 33(d)

<u>Interrogatory No. 4</u>

Interrogatory number 4 asks, "[p]lease state the factual and legal basis (including citation to specific statutes, codes, or regulations you contend apply) for your claim that "[a]s the owner and operator of the Aeronca aircraft, Defendant Jones was responsible for properly training

Defendant Hadley in the proper operation of the Aeronca aircraft." [Doc. 171-1, at 3]. Desert Aviation Parties objected that the interrogatory seeks a legal conclusion and is overly broad and unduly burdensome because it systematically tracks the counter claim's allegations. *Id.*

The Court agrees with Jones insofar as Desert Aviation Parties must answer this interrogatory with material facts regarding proper training and operation of the Aeronca. On its face this question does not track the allegations in Jones's pleading, nor in the context of the surrounding interrogatories. However, the Court will not compel Desert Aviation Parties to provide any legal basis supporting the facts. *See Lucero*, 240 F.R.D. at 594 ("Contention interrogatories that . . . ask for . . . application of law to fact that supports the party's allegations[] are an abuse of the discovery process").  The Court thus grants this request in part.

<u>Interrogatory No. 5</u>

Interrogatory number 5 asks, "[p]lease state the material facts you base your claim that Defendant Jones 'knew that the Aeronca aircraft was dangerous and had experienced a prior runaway on a startup in the past' as alleged in paragraph 16 of your Cross Claim." *Id.* at 4. Desert Aviation Parties responded:

- It is undisputed that Mr. Jones was the owner of the Aeronca at all times material in this case;
- According to the testimony of Mr. Hadley, he had flown the Aeron[c]a while owned by Mr. Jones prior to the [sic] of this incident; and
- According to the testimony of Mr. Jayne and Joseph Cirri, after this incident occurred, Mr. Jones's agent and/or employee Mr. Hadley stated he had a similar prior incident with the Aeronca. The deposition testimony of Mr. Jayne and Mr. Cirri and the prior Interrogatory responses of Mr. Jayne are incorporated herein by reference.

*Id.* Jones complains that these bullet points "do nothing to support or prove the allegation" in terms of advancing facts showing Jones knew the Aeronca was dangerous or had a prior runway. [Doc. 171, at 5]. Nor does the testimony "indicate[] Mr. Hadley ever reported that alleged incident [of a

6

prior runaway] to Mr. Jones." *Id.* at 6. Jones says Desert Aviation Parties attempt to equate ownership of the aircraft with actual notice of prior incidents. *Id.* at 5, 6.

The Court agrees with Jones. Evasive or incomplete interrogatory answers are treated as failure to respond. *See Lowe*, 2026 WL 926219, at *5. The first bullet point does not elucidate whether and to what extent Jones knew about the alleged prior runway. The second bullet point is also flawed. Flying an aircraft does not mean either the pilot or the owner affirmatively knew about prior incidents. The third bullet point impermissibly cites generally to two depositions and Jayne's interrogatory responses. Desert Aviation Parties must supplement these three bullet points to state specific material facts and provide specific deposition page and line numbers and the number of Jayne's relevant interrogatory answers. But if a citation still does not answer the question, a written response must be provided. *See* Fed. R. Civ. P. 33(d).

<u>Interrogatory No. 9</u>

Interrogatory number 9 asks "[p]lease state the material facts you base your claim that 'Defendant Jones failed to use reasonable care in hiring and retaining Defendant Hadley as Defendant Jones' employee or agent.'" [Doc. 171-1, at 6]. Desert Aviation Parties responded:

> The Desert Aviation Parties state that Mr. Jones knew or should have known that Defendant Hadley was unfit to fly to Aeronca based upon the lack of proper training and/or disregard of his training Mr. Hadley received on the Aeronca as exhibited by having failed on two occasions to properly tie down and chock the Aeronca during hand propping resulting in two runaway events, which Hadley admitted separately to Mr. Joseph Cirri and also to Mr. Tony Jayne shortly after the accident. Jones knew or should have known of the prior runaway event, and as Hadley's principal is imputed with Hadley's knowledge of such a prior event.

*Id.* Jones alleges that these "broad and conclusory pronouncements" and fabrication of another runaway event fall "desperately short of responding substantively." [Doc. 171, at 6].

The Court finds this response satisfactory. Desert Aviation Parties provided the facts upon which they base their claim of negligent hiring and retention. The Court agrees with Jones that

conclusory statements cabin the facts, but even striking the conclusory portions, the proffered facts that Hadley previously failed to properly secure the aircraft remain. Jones's disagreement with these facts may be investigated through discovery. The Court will not order supplementation of this response.

Interrogatory No. 15

Interrogatory number 15 asks "[p]lease state the material facts you base your claim that the 'prior runaway on startup' was caused by the same allegedly unairworthy condition you claim caused the Incident at issue here." [Doc. 171-1, at 9]. Desert Aviation Parties responded:

> According to the testimony of Mr. Jayne and Joseph Cirri, after this incident occurred, Mr. Hadley stated he had a similar prior incident with Aeronca. Pursuant to FRCP Rule 1-033(d), the Desert Aviation Parties further incorporate by reference the deposition testimony of Joseph Cirri, and Tony Jayne as these depositions have occurred since this discovery was served.

*Id.* Jones complains that this response does not substantively address the allegedly similar condition which caused this incident and a prior incident. [Doc. 171, at 7, 8].

The Court grants in part this interrogatory. Rule 33 allows a party to respond to an interrogatory by citing to documents so long as the documents are identified with specificity. Fed. R. Civ. P. 33(d); *see also Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 519 (D. Colo. 2009) (citation omitted) ("A party may refer to records, as opposed to providing a narrative, if the records are clearly identified") and *Pardick v. Barrow,* No. 07–CV–02056, 2008 WL 2902623, at *2 (D. Colo. July 24, 2008) ("A general reference to responsive documents is an insufficient response")). Desert Aviation Parties' general citation to Cirri's and Jayne's depositions does not comply with Rule 33(d). They must supplement this answer to include the specific deposition pages and lines they believe responsive to this interrogatory.

8

*Remaining Interrogatories:12, 13, 14, and 16*

Interrogatory No. 12

Interrogatory number 12 asks:

"Please state any services Desert Aviation , LLC performed or offered to pilots and aircraft landing at Deming Municipal Airport in the 10 years leading up to the Incident, including Desert Aviation, LLC's role in the provision of such a service, which involved the physical manipulation of the aircraft, whether by the pilot or Desert Aviation, LLC personnel (taxiing, repositioning, assistance with tie downs and/or chocks, startup, etc.)."

[Doc. 171-1, at 7]. Desert Aviation Parties specifically objected to the time period of 10 years and scope of every service as overly broad. *Id.* Subject to its objections, the answer stated "[a]mong other things, Desert Aviation offers refueling services to aircraft, oil to aircraft, as well as a loaner vehicle to pilots. Desert Aviation has tie downs available in designated parking spaces at the airport." *Id.* at 8.

The Court agrees that the requested 10-year time period and scope of any physical manipulation-related aircraft services are overly broad because they encompass far more than is relevant to the incident in question. The Court will limit the time period to the 5 years leading up to the incident and the scope of services to those performed on the Aeronca the day in question. Desert Aviation must furnish a complete, responsive answer to the interrogatory as limited, including dates and specific services performed.

Interrogatory No. 13

Interrogatory number 13 asks:

Has Desert Aviation, LLC ever hired, contracted with, retained, or otherwise coordinated with Joseph Cirri to provide aircraft or aviation related services and/or maintenance on their own behalf or for the benefit of Desert Aviation, LLC customers? If so, please state:
a) The nature and scope of the business relationship between Joseph Cirri and Desert Aviation, LLC;
b) Whether Joseph Cirri utilizes Desert Aviation, LCC facilities, equipment, tools, or instruments to perform his work;
c) Whether any agreement (written or otherwise) between Desert Aviation and Joseph Cirri exists.

9

[Doc. 171-1, at 8]. Subject to a block of objections, including to the lack of time restriction, the answer stated:

> Desert Aviation responds that Joseph Cirri is not an employee of, agent or, or contractor for Desert Aviation; rather, he is an independent aircraft mechanic. Pursuant to FRCP Rule 1-033(d), the Desert Aviation Parties further incorporate by reference the deposition testimony of Joseph Cirri, as Mr. Cirri's deposition has occurred since this discovery was served.

*Id.* at 8, 9. The Court grants this request in part. The Court agrees with Desert Aviation Parties that the request is overly broad without a time limitation. Therefore, the interrogatory will be limited to 5 years prior to the incident.

However, the Court also finds the answer is evasive and incomplete. *See Lowe*, 2026 WL 926219, at *5. Regarding subpart (a), Desert Aviation Parties' statement that Joseph Cirri, an independent mechanic, is not an employee, agent, or contractor indicates what Cirri is *not* in relation to Desert Aviation. But that still fails to answer what business relationship, if any, exists between Cirri and Desert Aviation. It appears no answer was given to subpart (b).  Further, Desert Aviation Parties' general citation to Joseph Cirri's deposition is insufficient under Rule 33's specificity requirement. *See* Fed. R. Civ. P. 33(d)(1). They must supplement their answer with specific page and line numbers within Joseph Cirri's deposition. But if a specific citation still does not answer the question, a written response must be provided. *See* Fed. R. Civ. P. 33(d).

<u>Interrogatory No. 14</u>

Interrogatory number 14 asks:

"Did Desert Aviation, LLC participate in the NTSB, FAA, or NM State Police investigation of this Incident? If so, please state:

    a)   Who at those agencies you spoke with, including dates, time and length of those interviews;

    b)   The substance and contents of the conversations or interviews with any of the agencies identified above;

    c)   Whether any documentation or written communications were created or produced pursuant to those investigations.

[Doc. 171-1, at 9]. Desert Aviation Parties answered:

> Pursuant to FRCP Rule 1-033(d), the Desert Aviation Parties incorporate by reference the reports of the above-listed agencies which already are in the possession of, and have been produced by, Mr. Jones. The Desert Aviation Parties did not create any documents pursuant to the above-listed investigations.

*Id.* The Court grants this request. Even if Jones has the reports, the interrogatory requests more and must be answered. Desert Aviation Parties must state specifically which reports are responsive to which interrogatory subparts and give page numbers if applicable. To the extent citations do not answer each subpart, Desert Aviation Parties must give a narrative answer. *See* Fed. R. Civ. P. 33(d). Particularly so with regard to subpart C, as it is unlikely that the official reports would include or reference Desert Aviation Parties' communications made after the investigations.

### Interrogatory No. 16

Interrogatory number 16 asks:

> If your responses to the Requests for Admission set out below is anything other than an unqualified admission, please state the basis for your denial, qualification, or other non-admission of the same.

[Doc. 171-1, at 9]. Desert Aviation Parties did not answer but objected to the entire interrogatory. *Id.* at 10. Their objections included improper contention interrogatories, vague, ambiguous, overly broad, speculative, and a fishing expedition. *Id.*

The Court has previously found this type of interrogatory improper because it attempts to circumvent the purpose of requests for admission. *See Griego v. Douglas*, 17-CV-024, 2019 WL 1505967, at *3 (D.N.M. Apr. 5, 2019). In *Griego*, the Court explained "admissions requests are not a discovery device and the court is not authorized to determine the accuracy of a denial to an admissions request or to determine the sufficiency of responses provided to corresponding interrogatories and document requests." *Griego*, 2019 WL 1505967, at *3. The Court concluded that the defendant was "inappropriately attempting to compel the responding parties to adopt [its]

11

position on disputed operative facts and thereby ratify the legal conclusions" attached to those facts. *Id.*; *see also SMHG Phase I LLC v. Eisenberg*, No. 22-CV-00035, 2023 WL 2275182, at *2 (D. Utah Feb. 28, 2023) (finding such a tactic "is an improper attempt to convert admissions by [the plaintiff] into interrogatories and thus expand the scope of discovery beyond what the Federal Rules allow"). The Court sees no reason to depart from this reasoning and so will deny Jones' request to compel an answer to this interrogatory.

### III.   REQUESTS FOR PRODUCTION

Rule 34 allows a party to serve a request for documents and information within the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a). "Possession, custody, or control" is not limited to ownership; it covers all items which a party either has the right, authority, or practical ability to obtain from a non-party. *City of Las Cruces*, 2021 WL 330062, at *8; *Landry v. Swire Oilfield Services, L.L.C.*, 323 F.R.D. 360, 382 (D.N.M. 2018) ("Simply put, if a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it."). Any objection to a request must say whether documents are being withheld. Fed. R. Civ. P. 34(b)(2)(C).

> Request for production number 4 asks:
>
> Please produce any and all correspondence, emails, text messages, or other communications between Desert Aviation, LLC personnel and Joseph Cirri exchanged from the date of the accident to today. To the extent you intend on withholding any communications between Joseph Cirri and Tony Jayne on the basis of that the same were exchanged in their personal capacities, this request is also directed at Defendant Jayne personally.

[Doc. 171-1, at 11]. Desert Aviation Parties responded that they "do not have responsive documents in their possession, custody, or control." *Id.*  Jones contested the denial because "Mr. Cirri testified during his deposition that he has exchanged texts with Mr. Jayne and Mr. Benavidez, including the day before the deposition" and attach the deposition excerpts in support. [Doc. 171,

at 8]. Desert Aviation Parties say Jones' position is "nonsensical" because "*Mr. Cirri* testified he had text messages with Desert Aviation Parties," as opposed to Jayne. [Doc. 174, at 8, 9]. They instead invite Jones to subpoena Cirri's records record because Cirri is not party to the lawsuit. *Id.*

The Court grants this request. Desert Aviation Parties do not deny that Jayne and Benavidez conversed with Cirri. Jayne and Benavidez would thus possess any text messages exchanged with Cirri. Desert Aviation Parties' attempt to assign Cirri the sole responsibility for producing any texts by virtue of his deponent status is a distinction without a difference. Desert Aviation Parties do not cite any authority advancing this proposition. If Jayne or Benavidez sent or received texts during conversations with Cirri, they must produce the messages.

## IV.     REQUESTS FOR ADMISSION

Under Fed. R. Civ. P. 36(a)(4) a party has several options when responding to requests for admission: "(1) object[ing] on the grounds that the requested matter is beyond the scope of discovery permitted by Rule 26(b)(1); (2) admit[ting] the request; (3) deny[ing] the request; (4) provid[ing] a detailed explanation why, after making reasonable inquiry, the matter can neither be admitted nor denied; or (5) provid[ing] a good faith qualified admission or denial that admits certain matters, if possible, but denies or gives a qualified answer to the rest." *Montes v. Pinnacle Propane, L.L.C.*, No. 16-CV-0126, 2016 WL 9819527, at *1 (D.N.M. Oct. 18, 2016).

A denial is a "specific and [] proper response" to an admissions request and does not require an explanation. *Id.* (internal citations omitted). If the opposing party disputes the denial, that party may seek relief under Rule 37(c) which "provides a sanction for the enforcement of Rule 36." *Cont'l Cas. Co. v. Brummel*, 112 F.R.D. 77, 82 (D. Colo. 1986) ("Rule 36 does not provide a mechanism for determining whether the responses are warranted by the evidence"). *Id.* The remedy is under Rule 37 "to prove the truth of what was not admitted at trial and then move the Court for

its reasonable expenses incurred in making that proof." *Montes*, 2016 WL 9819527, at *1 (citing

Fed. R. Civ. P. 37 (c)(2)); *see* 7 MOORE'S FEDERAL PRACTICE, § 36.12[3] ("A motion to

determine the sufficiency of a response to a request for admission is not to be used as an attempt

to litigate the accuracy of a response").

Requests for Admission Nos. 1, 3, and 5

Jones disputes Desert Aviation Parties' denials to requests for admission numbers 1, 3, and

5 and their failure to "provide the basis for such denials as requested in Interrogatory 16." [Doc.

171, at 9]; [Doc. 171-1, at 12, 13]. The Court will not compel an explanation of each denial in

response to interrogatory number 16 for the reasons explained above. Nor will the Court compel

Desert Aviation Parties to supplement their denials because the Court may not force parties to

admit facts or strike a party's answers. *See Montes*, 2016 WL 9819527, at *1.

Request for Admission No. 6

However, the Court will require Desert Aviation Parties to supplement their answer to

request for admission number 6, which asks:

> Admit that the airworthiness issues identified in the February 28[], 2025 report provided
> by Steve Magginetti (return to service entry lacking aircraft total time, emergency locator
> transmitter not being equipped, lack of AD log, replacement of Brackett Aero air filter)
> could not be the proximate cause of the runaway event at issue in this lawsuit.

[Doc. 171-1, 13].  Desert Aviation Parties objected that "one party cannot demand that the other

party admit the truth of a legal conclusion" and that the request was "vague, ambiguous, and

compound." *Id.* at 14. Subject to that objection, Desert Aviation Parties stated:

> A reasonable inquiry was made and the information known or easily obtainable is
> insufficient to admit or deny this request; as such, the Desert Aviation Parties cannot
> truthfully admit or deny this request as it calls for expert testimony.

14

*Id.* The Court agrees with Jones that proximate cause is a question of fact and not a legal conclusion. *See In re Otero Cnty. Hosp. Ass'n, Inc.*, 584 B.R. 783, 794 (Bankr. D.N.M. 2018) (collecting cases). Nor does the Court find the request for admission vague, ambiguous, or compound on its face; Desert Aviation Parties' objections are therefore overruled.

Rule 36 allows a party to refrain from admitting or denying facts after making a "reasonable inquiry." Fed. R. Civ. P. 36(a)(4). The rule also requires a "detailed explanation." *Id.* ("[I]f a matter is not admitted, the answer must specifically deny it *or state in detail why the answering party cannot truthfully admit or deny it*") (emphasis added). Desert Aviation Parties' answer does not provide a detailed explanation. Although they say the request "calls for expert testimony," no context is given for why an expert is needed, what the expert would opine on, or why a lay person could not formulate an answer. Desert Aviation Parties must supplement this answer to include a detailed explanation for why, particularly in light of the Court overruling their objection on proximate cause, they cannot admit or deny the request.

## V.   <u>CONCLUSION</u>

Jones requests costs and fees associated with bringing this motion. [Doc. 171, at 10]. Under Rule 37(a)(5)(C), the Court finds that Jones is entitled to attorneys' fees and costs associated with his prevailing requests. Within **thirty days of entry** of this Order, Jones may submit an affidavit setting forth the fees and expenses incurred in connection with such requests. Desert Aviation Parties may lodge objections to the requested fees and expenses within fourteen days of service of the affidavit.

**IT IS THEREFORE ORDERED** that Defendant William Cody Jones' motion to compel [Doc. 171] is **GRANTED IN PART and DENIED IN PART** as set forth above. Desert Aviation must serve their amended responses **within 30 days of entry of this Order.**

Hon. Jerry H. Ritter
United States Magistrate Judge