IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BLUE AIR TRAINING CORPORATION,

    Plaintiff,

v.                                                                                  No. 2:23-cv-0734-KG-JHR

COLLIN HADLEY, TONY JAYNE, DESERT
AVIATION, LLC, and WILLIAM CODY JONES,

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on two motions: (1) Defendant William Jones' Motion to Strike the opinion of Steve Magginetti, Doc. 178, and (2) his Motion for Attorney's Fees, Doc. 185. Defendant Collin Hadley later joined Jones' Motion to Strike, Doc. 183. Cross-claimant Desert Aviation, LLC, responded to both motions, Docs. 181, 185, and Hadley and Jones replied, Docs. 184, 187. For the reasons below, the Court grants in part and denies in part Jones' Motion to Strike, Doc. 178, and denies his Motion for Attorney Fees, Doc. 185.

## I.    *Background*

This case arises from a ground collision between two aircraft at the Deming Municipal Airport on December 15, 2022. Doc. 18 at 1. Plaintiff's parked Valmet A-90 Raider ("Valmet") was struck by an Aeronca 65CA Super Chief ("Aeronca"), and Plaintiff alleges that Defendants' negligence is to blame. *Id.*

On the day of the collision, Defendant Hadley landed the Aeronca, a plane owned by Defendant Jones, at the Deming Municipal Airport to refuel. *See* Doc. 18 at 4. At the time, Defendant Desert Aviation, LLC ("Desert") was the operator of the Deming Municipal Airport.

1

*See* Doc. 182 at 2.  After refueling, Defendant Hadley asked Defendant Jayne, an airport employee, to help him "hand-prop" the Aeronca.  *Id.*  To do this, Defendant Jayne sat in the pilot's seat while Defendant Hadley spun the propeller by hand.  Doc. 18 at 4, Doc. 182 at 2.  Once the Aeronca's engine started, Defendant Jayne lost control of the aircraft despite Defendant Jayne's attempts to steer and apply the brakes.  Doc. 18 at 5.  As a result, the Aeronca collided with Plaintiff's parked Valmet.  *See* Doc. 18 at 5.

Plaintiff's six count Amended Complaint alleges negligence by each of the Defendants, as well as respondeat superior and vicarious liability against Desert and Defendant Jones.  *See generally* Doc. 18.  Desert and Defendant Jayne filed crossclaims against Defendants Jones and Hadley for negligence, negligence per se, vicarious liability, contribution, and indemnity.  *See* Doc. 27 at 15–24.  The Court granted summary judgment in favor of Defendant Jones as well as partial summary judgment in favor of Defendant Hadley.  *See* Docs. 180, 182.

Desert and Defendant Jayne retained Mr. Steve Magginetti as an expert on airplane mechanics and accident reconstruction and investigation.  *See* Doc. 178-5.  Defendant Jones now moves to strikes Mr. Magginetti's opinions, arguing that "they are unreliable, irrelevant, and completely steeped in baseless conjecture."  Doc. 178 at 13.  Defendant Jones also moves for fees against Desert and Defendant Jayne's counsel under 28 U.S.C. § 1927, and the Court's inherent authority.  *See* Doc. 185.

## II.    *Legal Standard*

Rule 702 governs the admissibility of expert testimony.  It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;

2

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In the Tenth Circuit, trial judges must apply "a two-part test" when determining admissibility of expert testimony under Rule 702 and *Daubert*. *Est. of Ferrell by & through Ferrell v. KB Custom Ag Servs. LLC*, 2025 WL 2461287, at *21 (D. Kan.); *see Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 580 (1993). First, courts must determine whether the expert "is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Second, courts must satisfy themselves that the "proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *Id.* If expert testimony is unreliable, "it is also unhelpful-and therefore irrelevant." *Am. Towers LLC v. BPI, Inc.*, 2016 WL 8198333, at *1 (E.D. Ky.).

The proponent of the expert testimony bears the burden to satisfy Rule 702 by a preponderance of the evidence. *Id.* Once that threshold is met, "[t]he bases and sources of an expert's opinion...go to the weight to be assigned to that opinion—rather than admissibility—and are for the trier of fact to determine." *Coronado v. Flowers Foods*, 2021 WL 4477910, at *1 (D.N.M.). "[R]ejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's notes to 2000 amendments. While *Daubert* makes trial courts the "gatekeeper for expert testimony," "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

3

### III.    *Analysis*

For the reasons below, the Court concludes that (A) Mr. Magginetti is qualified; (B) his opinions are generally reliable; (C) Defendant Jones' request to bar certain testimony is granted in part and denied in part; and (D) attorney's fees are not warranted.

### A.    **Magginetti is qualified to serve as an expert.**

As an initial matter, the Court concludes that Mr. Magginetti is qualified to serve as an expert witness in this case. *See Nacchio*, 555 F.3d at 1241. Indeed, no party argues that Mr. Magginetti is not qualified to render an opinion as an aircraft maintenance and compliance expert. To qualify as an expert witness, the witness must possess "such skill, experience, or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).

Mr. Magginetti is a graduate of the University of Southern California's Viterbi School of Engineering and has been "involved in aviation maintenance for over 50 years." Doc. 178-5 at 1. He specializes in airplane "accident reconstruction and investigation," has investigated "over 400 accidents or incidents," and has hand-propped "an estimated 150 to 200 different aircraft." *Id.* He has also served as an expert "in Federal, State, and county courts." *Id.*; *see also BC Dental, Inc. v. FSH Maint., LLC,* 2024 WL 5186887, at *3 (M.D. Fla.). Accordingly, for purposes of this Order, the Court will assume he is qualified to testify as such an expert.

### B.    **Magginetti's opinions are generally reliable.**

Next, the Court concludes that Mr. Magginetti's opinions are generally the product of reliable "reasoning and methodology." *Nacchio*, 555 F.3d at 1241. To determine whether an expert's testimony is reliable, a "court must assess the reasoning and methodology underlying

the expert's opinion." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)

(internal quotation marks and citation omitted). Courts typically consider the following

nonexclusive factors:

> (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community.

*Daubert*, 509 U.S. at 593–94. The *Daubert* factors are nonexclusive, however, and may also rest

on the personal knowledge or experience of the expert in cases of technical testimony. *See*

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999). Courts often "depart from the

mechanical application of every *Daubert* factor in assessing the reliability of non-scientific

expert witnesses." *Parris v. 3M Co.,* 2026 WL 793210, at *7 (N.D. Ga.).

Here, Mr. Magginetti provided seventeen opinions at the conclusion of his report.

*See* Doc. 181-2 at 18–20. Namely, that the Aeronca was in an "un-airworthy condition on

December 15, 2022," and that that condition was "the responsibility of Jones." *Id.* at 20. In

addition, Mr. Magginetti opined that the "root cause of the accident was a human factor: failure

of [Hadley] to utilize wheel chock and tie down the tail contrary to FAA-published procedures"

and that "Hadley had a historic practice of using careless and reckless practices in starting the

engine." *Id.* at 19, 20.

To prepare his report, Mr. Magginetti "compare[d] aircraft operations as prescribed by

the FAA, 14 CFR part 91, and 61 regulations and [his] empirical knowledge" "to the events that

occurred on or around December 15, 2022, in Deming, NM." Doc. 178-1 at 2. Mr. Magginetti

reviewed more than thirty documents for his report, including "FAA Aeronca Airworthiness and

Registration files," "disclosures" from the parties involved in the accident, including Desert and

Defendant Jayne, the "NTSB report," and the "state of New Mexico Incident Report."  Doc. 181-2 at 21.  He additionally reviewed Defendant Hadley's "flight logs" and the Aeronca's "Pilot Operations Handbook" as well as disclosures and interrogatories from all parties.  *Id.*  The Court is satisfied that Mr. Magginetti's methodology is generally grounded in his "professional experience, education, training, and observations."  *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006).  There is no analytical gap between his methods and his conclusions about the events that took place on the day of the collision.  *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  The Court concludes that Mr. Magginetti's opinions are generally reliable.

Defendant Jones' arguments against Mr. Magginetti's reliability are unpersuasive.  He argues that Mr. Magginetti's methodology is unreliable because he "never personally inspected the Aeronca or Valmet" before making his report.  Doc. 178 at 5.  But Rule 702 and *Daubert* do not require an expert to have firsthand knowledge, they only require that the evidence be relevant and reliable.  *Daubert*, 509 U.S. at 592 (noting an expert may offer opinions "not based on firsthand knowledge or observation" because courts assume the expert's opinion "will have a reliable basis in the knowledge and experience of his discipline.").  As discussed above, Mr. Magginetti's methodology is reliable based on the documents and regulations he reviewed as well as his extensive professional experience.  *See* Doc. 181-2 at 21.  Should he choose to do so, Defendant Jones may challenge Mr. Magginetti's investigative process through cross-examination.

   **C.     Defendant Jones' request to bar certain testimony is granted in part and denied in part.**

Defendant Jones also seeks to limit seven of Mr. Magginetti's specific opinions. *See* Doc. 178 at 2.  First, he seeks to preclude "opinions regarding the legal status of Defendant

Jones as the 'operator' of the aircraft." *Id.* The Court agrees and strikes those opinions from the report. The Court previously granted summary judgment in this case. *See* Doc. 180. The crux of that Order was a determination that Defendant Jones was not in "operational control" of the Aeronca for purposes of liability. *Id.* at 6. Further testimony on whether Defendant Jones was the "operator" of the Aeronca is irrelevant to the trier of fact and is also unhelpful under Rule 702(a). *See also Cypress Ins. Co. v. SK Hynix Am., Inc.*, 2019 WL 634684, at *1 (W.D. Wash.) ("[T]he Court will limit expert testimony on issues already decided by way of summary judgment.").

Second, Defendant Jones seeks to limit testimony about "the existence of any agency relationship between Defendant Jones and Defendant Hadley." Doc. 178 at 2. The Court agrees and bars that testimony. Expert testimony is limited to the scope of the witness' expertise. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Mr. Magginetti's expertise in airplane maintenance does not extend to concluding whether agency relationships exist between parties. Such testimony is not relevant. While Mr. Magginetti may testify as to the documents he reviewed as a basis for his report, his opinions regarding any agency relationship between Defendants Jones and Hadley are struck from the report.

Third, Defendant Jones seeks to prohibit testimony that he had "any obligation...to incorporate Supplemental Type Certificates (STC's) through the installation of aftermarket systems, or that such systems could have decreased the likelihood that this incident could have occurred." Doc. 178 at 2. The Court agrees in part. While Mr. Magginetti may not testify to the issue of causation in this case, which is for the jury to decide, he may provide his technical opinion on the use of Supplemental Type Certificates and their general effect on reducing collisions. *See United States v. Richter*, 796 F.3dc 1173, 1195 (10th Cir. 2015).

Fourth, Defendant Jones seeks to bar any testimony on "the airworthiness of the [Aeronca] or the alleged irrelevant service and reporting failures identified in his report." Doc. 178 at 2. The Court disagrees. Questions about the Aeronca's airworthiness on the date of the accident are relevant, and Mr. Magginetti's qualifications permit his testimony on the topic.

Fifth, Defendant Jones seeks to prohibit "opinions regarding the existence of a mechanical defect in the throttle or brakes of the aircraft." Doc. 178 at 2. He argues that Mr. Magginetti's opinion of a defect "ignores contradictory statements" made by others and should be prohibited. *Id.* at 6. The Court disagrees. The "focus" of a *Daubert* inquiry "must solely be on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 580. Arguments regarding the basis of Mr. Magginetti's conclusions go to the weight of the evidence, not its admissibility.

Sixth, Defendant Jones seeks to prohibit "opinions regarding the existence of a prior runaway event or its purported cause." Doc. 178 at 2. He argues that Defendant Hadley "denies having any other runaway incidents" and that to "suggest that Defendant Hadley was careless or reckless because of an alleged previous runaway incident...is disingenuous." Doc. 178 at 9. The Court agrees. Mr. Magginetti lacks a proper foundation—his opinion is not based on any mechanics reports but relies on "personal information of a hearsay nature" to form his opinion. *Clifton v. Mangum*, 366 F.2d 250, 253 (10th Cir. 1966). The Court therefore strikes opinions regarding a prior runaway event from the report.

Finally, Defendant Jones seeks to bar "opinions regarding the 'root cause' of the accident being a failure to utilize wheel chocks and tie downs contrary to FAA-published procedures." Doc. 178 at 2. The Court disagrees. Mr. Magginetti's expertise includes compliance and best practices in line with FAA regulations. His opinion that the accident resulted from Defendant

Hadley's failure to follow those procedures is grounded in his specialized knowledge of aircraft maintenance and experience with accident investigation. Defendant Jones' contention that Mr. Magginetti lacks sufficient expertise in flight operations goes to the weight of the testimony. *See Daubert*, 509 U.S. at 596.

> **D.      Sanctions against Desert and Defendant Jayne are not warranted.**

Lastly, the Court declines to impose sanctions against Desert and Defendant Jayne's counsel under § 1927 or the Court's inherent authority. Courts have the inherent authority to assess attorney fees against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d 1159, 1164 (10th Cir. 1985). Section § 1927 "is a natural outgrowth of [that] inherent authority," *see id.*, and provides that an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An attorney's actions are considered "vexatious and unreasonable" under the statute if the attorney "acted in bad faith." *Dreiling*, 768 F.2d at 1165.

In Defendant Jones' view, Desert and Defendant Jayne's counsel knew that the crossclaims filed against Defendant Jones were baseless and unamenable to attempts to dismiss Defendant Jones. While the Court ultimately ruled against the crossclaims, *see* Doc. 180, the Court is not convinced that the claims were so lacking in merit that Counsel should personally be sanctioned. Requiring Desert and Defendant Jayne's counsel to personally bear the cost of Defendant Jones' fees is not appropriate. *See Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (noting attorney fees should be awarded "only in instances evidencing a serious and standard disregard for the orderly process of justice").

Defendant Jones' counterargument is unpersuasive.  He argues that while valid disputes supported with facts serve as a "good-faith" basis for maintaining an ultimately faulty claim, "standing on nothing but their own self-serving speculation" is decidedly not.  Doc. 187 at 5. While this distinction carries some weight, it does not satisfy the statute's "extreme standard," under which attorney's fees should be awarded "only in instances evidencing a serious and standard disregard for the orderly process of justice."  *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015).  Even assuming Desert and Defendant Jayne's counsel relied on weak or speculative arguments, speculation alone does not establish the type of unreasonable and vexatious conduct required for sanctions.

## IV.    *Conclusion*

For the reasons above, the Court grants in part and denies in part Jones' Motion to Strike, Doc. 178, and denies his Motion for Attorney Fees, Doc. 185.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document.  Electronically filed documents can be found on the Court's PACER public access system.